**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GARY F. WEST,**

    **Plaintiff,**

vs.     Case No.: 8:13-CV-2650-T-33EAJ

**CAROLYN COLVIN,**
**Acting Commissioner of Social**
**Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends affirming the Commissioner's decision and dismissing this case.[1]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler,

---

[1] The District Judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I. Background**

On June 8, 2010, Plaintiff filed an application for SSI, alleging disability beginning December 25, 2002.[2] (T 116) Plaintiff's application was denied initially and upon reconsideration, and an administrative hearing was held on May 21, 2012. (T 19, 72, 79) Sixty-one years old at the time of the hearing, Plaintiff has a high school education and past relevant work experience as an underground cable installer. (T 27-28)

On July 17, 2012, an ALJ denied Plaintiff's application. (T 29) Although Plaintiff's severe impairments included lumbar degenerative disc disease, arthritis of the hip, chronic obstructive pulmonary disease, and hypertension, these impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T 21) Despite these impairments, Plaintiff was determined to have a residual functional capacity ("RFC") for medium work with the

---

[2] At the administrative hearing Plaintiff amended his alleged onset date to June 8, 2010. (T 19)

2

following limitations: occasionally lift up to fifty pounds; frequently lift and carry up to twenty-five pounds; never climb ladders, ropes, or scaffolds; frequently climb ramps/stairs, balance, stoop, crouch, kneel, or crawl; and must avoid even moderate exposure to extreme cold, extreme heat, humidity, and irritants such as fumes, odors, dust, and gases. (T 24)

The ALJ found that Plaintiff was unable to perform his past relevant work as an underground cable installer. (T 28)  However, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of performing jobs available in significant numbers in the national economy, such as warehouse worker, dining room attendant, and hospital cleaner. (T 28-29) Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period. (T 29) On September 23, 2013, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 1-3)

The medical and other evidence has been reviewed in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

On appeal, Plaintiff alleges that the ALJ erred by: (1) failing to find Plaintiff suffered from a severe mental impairment; (2) substituting his own opinion for those of the medical experts; (3) failing to consider the combined effect of all impairments; (4) improperly discrediting Plaintiff's testimony regarding his subjective pain symptoms; and (5) not including significant limitations in Plaintiff's RFC assessment, and (6) posing an incomplete hypothetical to the VE.[3]

**A.**    An impairment can be considered as not severe only if it is "a slight abnormality which has

---

[3] The issues are addressed according to the sequential review process for disability claims, not in the order presented in Plaintiff's memorandum of law.

such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (per curiam). An ALJ's conclusion that an impairment is not severe must be supported by substantial evidence. Id. at 921. The severity of an impairment must be measured "in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

Finding that Plaintiff did not have a severe mental impairment, the ALJ stated that Plaintiff's medically determinable mental impairments of depression and anxiety do not cause more than minimal limitation on his ability to perform basic mental work activities and are therefore nonsevere. (T 21)

Plaintiff was treated by psychiatrist Bharminder S. Bedi, M.D. ("Dr. Bedi") from October 2010 to December 2011. Dr. Bedi conducted an initial evaluation on October 29, 2009. Plaintiff was diagnosed with underlying anxiety disorder with adjustment disorder and prescribed Xanax, Zoloft, and Depakote. (T 226-28) On November 19, 2009, Plaintiff stated he was having financial problems and remained anxious, discouraged, and his mind races. His prescription for Depakote was adjusted to 500 milligrams, and his prescription for Zoloft was adjusted to 200 milligrams. (T 223) On December 22, 2009, Plaintiff stated that he was doing better than before. Although Plaintiff stated he did not sleep well, Dr. Bedi would not prescribe sleeping pills. Plaintiff was less stressful, anxious, and not negative, and he was having fewer financial issues. (T 225) On January 19, 2010, Dr. Bedi noted that Plaintiff "is doing much better than before" and that he was doing well with his medications. (T 224) On March 18, 2010, Plaintiff was lonely because wife was away but was

happy upon her return. Plaintiff was dealing with financial issues but was not having any panic attacks. (T 222)

On August 17, 2010, Plaintiff returned to Dr. Bedi after he was unable to be seen for several months due to transportation and insurance issues. Plaintiff stated that he was becoming anxious, nervous, and panicky when not taking his medications. (T 319)  On September 14, 2010, Plaintiff was doing well with the medications. (T 318)  On October 12, 2010, Dr. Bedi noted that Plaintiff's anxiety and panic attacks were under control with the prescription combination of Zoloft, Klonopin, and Depakote. (T 317)  On November 9, 2010, Plaintiff claimed he could not sleep, but his anxiety was under control. Dr. Bedi noted, "He is generally doing well." (T 315-16)  December 9, 2010 progress notes indicate that Plaintiff was experiencing some anxiety and panic feelings, the Klonopin was helping, and he was not feeling depressed. Dr. Bedi also completed a treating source mental status report that stated Plaintiff had a clear thought process and fair memory, was oriented, was not experiencing any hallucinations or perceptual disturbances, and was competent to manage funds. (T 308-12, 314)

On January 6, 2011, Plaintiff was experiencing a lot of stress due to financial issues and was feeling overwhelmed. Dr. Bedi continued his medications. (T 405)  On March 4, 2011, Plaintiff stated that he was concerned about tax and property issues, but he was stable on his medications. (T 403)  On April 1, 2011, Plaintiff was still dealing with property issues, but his anxiety was under control with medications. (T 402)  On April 29, 2011, Dr. Bedi continued Plaintiff's medications, noting that they controlled his panic attacks. (T 401)  On May 27, 2011, Plaintiff was having panic attacks and dealing with psychosocial and financial issues. (T 400)  On June 23, 2011, Plaintiff was doing well, and his panic attacks were under control. (T 399)  On July 21, 2011, Plaintiff was doing

okay with anxiety and panic, and he was stable on his medications. (T 398)  On August 18, 2011, Plaintiff was doing okay with anxiety and panic. (T 397)  On September 13, 2011, Plaintiff stated that he gets panicky and nervous but his medications help him. (T 396)  On October 11, 2011, Plaintiff was happy as everything was stable.  His panic attacks were under control and he is not depressed or discouraged. (T 395)  On December 2, 2011, Plaintiff was stable on medications but still gets anxious, nervous, and panicky due to stresses. (T 394)  On December 29, 2011, Plaintiff was nervous but happy about going on a cruise. (T 393)

After summarizing the treatment records from Dr. Bedi, the ALJ found that the treatment records indicated that Plaintiff's mental impairments were controlled by medication and afforded great weight to Dr. Bedi's December 2011 treating source mental status report, which indicated that Plaintiff's mental status was within normal limits. (T 22, 308-10)

The ALJ also considered Plaintiff's mental impairments under the "paragraph B" criteria. (T 23)  In assessing Plaintiff's mental impairments, the ALJ reviewed four broad functional areas, known as the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 20 C.F.R. § 404.1520a(c) (2011). (T 23-24)  The ALJ determined that the evidence demonstrated that Plaintiff experienced no greater than mild difficulties with activities of daily living, social functioning, and difficulties with concentration, persistence, or pace, and that Plaintiff experienced no episodes of decompensation of extended duration. (Id.)  The ALJ correctly noted that these "paragraph B" criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. (T 24)  And the ALJ indicated that the RFC assessment reflected the degree of limitation found in the "paragraph B" mental function analysis. (Id.)

Despite Plaintiff's contention, the ALJ properly considered his alleged mental impairments and determined them to be nonsevere. Although Plaintiff was diagnosed with depression and anxiety, a diagnosis alone is insufficient to establish that an impairment is severe. See Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002) (citing Brady, 724 F.2d at 920). Plaintiff fails to cite any persuasive evidence that these impairments, alone or in combination with other impairments, limited his ability to perform basic work activities. This determination is supported by substantial evidence as the treatment notes from Dr. Bedi indicate that Plaintiff's mental impairments were controlled by medication and did not impose any work-related restrictions.

**B.**     Plaintiff contends that the ALJ erred in evaluating Dr. Bedi's opinion as Dr. Bedi's treatment notes show that Plaintiff suffers from severe mental impairments. Plaintiff argues that the severity of his mental impairments is corroborated by the GAF scores assigned by Dr. Bedi.

The Commissioner may not substitute her own opinion as to the claimant's condition for that of medical experts. Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986) (citations omitted) (holding that the Commissioner substituted his opinion for that of the medical expert when he determined the plaintiff appeared somewhat handicapped); Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982) (finding that the Commissioner improperly determined the claimant's condition based on his own observations of the claimant's physical condition).

As discussed above, Dr. Bedi's treatment notes indicate that Plaintiff's mental impairments are controlled by medication and do not rise to the level of a severe impairment as defined under the Act. In this regard, the ALJ did not substitute his own opinion for the opinion of Dr. Bedi.

Plaintiff's argument regarding the ALJ's treatment of his GAF scores is also without merit.[4] Dr. Bedi's treatment notes indicate that Plaintiff had the following GAF scores: 50-55 on October 29, 2009 (T 227); 48-50 on August 17, 2010 (T 320); 50-60 on February 3, 2011 (T 404); 55+ on June 23, 2011 (T 399); 55 on August 18, 2011 (T 397); and 55-60 on December 2, 2011 (T 394). In his decision, the ALJ stated:

> As for the various GAF scores mentioned throughout the treatment notes, the GAF scale is just one tool used by clinicians to develop the clinical picture. It is not stated in specific functional terms and requires an inappropriate interpretation on the degree to which functioning is limited in an individual. Additionally, it cannot be used in isolation from the rest of the evidence to make a disability decision. The undersigned carefully considered the GAF scores assigned by Dr. Bedi, but the Commissioner has specifically declined to endorse the GAF scale . . . .

(T 23)

"[T]here is no rigid requirement that the ALJ state with particularity the weight given to GAF scores." Cranford v. Comm'r of Soc. Sec., No. 6:13-cv-415- ORL-GJK, 2014 WL 1017972, at *7 (M.D. Fla. Mar. 17, 2014). "[A] GAF score does not necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work." Ward v. Astrue, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2009) (citation and internal quotations

---

[4] The GAF scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without considering any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th ed. text rev. 2000). A GAF score represents a subjective determination (based on a scale of 100 to 1) of a patient's overall level of functioning. Id. A GAF score of 41–50 indicates serious symptoms; a score of 51–60 indicates moderate symptoms; and a score in the range of 61–70 indicates mild symptoms. Id. at 32–34. Yet, in Social Security benefits determinations, the Commissioner has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (per curiam) (unpublished) (citation and internal quotation marks omitted). Additionally, the 2013 revisions to DSM manual do not provide for the use of GAF scores due in part to "conceptual lack of clarity . . . and questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders ("DSM-V") at 16 (5th ed. text rev. 2013).

omitted). As the medical records containing Plaintiff's GAF scores do not impose any work-related restrictions, the ALJ did not err by not assigning weight to the scores.

**C.** According to Plaintiff, the ALJ failed to make "an explicit comparison as to how the Claimant's impairments interact with each other. Furthermore, he failed to make a comparison as to how the Claimant's mental impairments interact with his physical ones." (Dkt. 21 at 12) Plaintiff's argument is conclusory and does not contain an analysis specific to the facts of this case. The ALJ must consider each alleged impairment singularly as well as the combined effect of those impairments. Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). The combined effect of impairments must be considered even where the impairments are not individually found to be severe. Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (per curiam). Where the ALJ does not comply with these requirements, the disability finding must be reversed and the case remanded. Gibson, 779 F.2d at 623. Where the ALJ has provided an exhaustive discussion of the evidence, however, the court may conclude that the combined effect of a claimant's impairments has been considered. Jones v. Bowen, 810 F.2d 1001, 1006 (11th Cir. 1986) (per curiam).

The ALJ's decision reflects a proper consideration of Plaintiff's impairments that are supported by medical evidence in the record. The ALJ concluded at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (T 24) Similar language has been held sufficient to discharge the Commissioner's obligation to consider impairments in combination. See Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (per curiam) (ALJ properly considered combined effect of impairments in finding that claimant is "not suffering from any impairment, or a combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity").

**D.**     Plaintiff asserts that the ALJ did not properly assess the credibility of his statements regarding the intensity, persistence, and limiting effects of his symptoms. He contends that the ALJ did not articulate adequate reasons, based on substantial evidence, to discredit his subjective pain complaints. Plaintiff also contends the ALJ erred by citing to an ability to perform several activities of daily living in finding Plaintiff less than credible.

Subjective complaints are evaluated according to a three-part "pain standard" that is used when a claimant attempts to establish disability through testimony about pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition; or (3) the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam). If the ALJ does not credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam). "A clearly articulated credibility finding that is substantially supported by the record will not be overturned." Id. at 1562 (citation omitted).

The ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). However, the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits.

Hoffman v. Astrue, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam) (unpublished)[5] (citations omitted).

To satisfy the first part of the standard, Plaintiff is required to show objective medical evidence of an underlying medical condition. Landry, 782 F.2d at 1553. The ALJ found that Plaintiff had the severe impairments of lumbar degenerative disc disease, arthritis of the hip, chronic obstructive pulmonary disease, and hypertension that could reasonably be expected to case the alleged symptoms. (T 26)

Plaintiff testified that he has arthritis in most of his joints and that Tramadol was not as effective as it once was, although Zoloft and Klonopin were helping with his panic attacks. (T 40-41) He cannot walk a block more than a few minutes without having to sit down. Able to sit for fifteen to twenty minutes before needing to stand up for a minute, he is unable to grip or lift anything, including milk jugs and everyday items. (T 41-42) He experiences pain in his hands and elbow and has difficulty using buttons on clothes and wears slip-on shoes. (T 47-48)

Plaintiff spends most of his day in bed. He is unable to engage in his former hobbies, including riding motorcycles and working on "things." (T 42) He does not attend church, and he seldom uses a computer. He is able to dress himself but it takes awhile. (T 43) He can prepare a sandwich or microwave prepared food, but he does not cook. (Id.) If he goes grocery shopping with his wife, he usually rides a cart. He does not perform any household chores except for feeding his dog. (T 46) He experiences pain so severe that it interferes with his ability to focus and concentrate on a daily basis, sometimes multiple times in a day. (T 47)

---

[5] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

The ALJ determined that Plaintiff's subjective pain complaints were only partially credible to the extent they were consistent with the RFC assessment.[6] (T 25) The ALJ stated that Plaintiff's allegations were inconsistent with the totality of the evidence and noted that Plaintiff alleges disabling back pain that is so severe he is unable to perform simple tasks and he can only walk a few minutes, but he was well enough to travel to New Hampshire in December 2010. (T 26) Also, Plaintiff was able to go on a cruise in December 2011. (Id.) Although Plaintiff stated he could not lift any amount of weight because of his weak grip, a physical and pulmonary consultative examination completed by Ashok Avaiya, M.D. ("Dr. Avaiya"), in February 2011 noted that Plaintiff's bilateral handgrip strength was normal. (T 337) Dr. Avaiya indicated that Plaintiff ambulated with a normal gait without any assistive device but was unable to walk on heels and toes. (Id.) Additionally, despite claiming an inability to walk due to pain, Plaintiff had 5/5 motor strength in his upper and lower extremities, and his sensory and motor functioning was within normal limits in October 2011. (T 368-69) The ALJ concluded that the record did not support Plaintiff's claim that use of a cane was medically necessary. (T 27)

In reviewing a decision denying disability benefits, the Court cannot reweigh the evidence as long as substantial evidence supports the ALJ's conclusions, as in this case. The ALJ clearly articulated reasons for not fully crediting Plaintiff's allegations, and substantial evidence supports the ALJ's credibility determination; this issue does not entitle Plaintiff to relief. See Allen v.

---

[6] To the extent that Plaintiff contends that the ALJ applied the wrong legal standard because the ALJ used "boilerplate language" suggesting that the ALJ compared Plaintiff's testimony to the RFC and not to the evidence of record as required, this position is without merit. The ALJ's credibility determination does not have to include any "particular phrases or formulations" as long as it provides enough explanation for the court "to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (citation and internal quotation marks omitted).

Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

**E.** Plaintiff's next claim is that the ALJ excluded significant limitations from his RFC assessment. Plaintiff claims that the ALJ erred in determining Plaintiff's RFC by failing to consider all of Plaintiff's mental and physical impairments.

The ALJ ultimately is responsible for determining a claimant's RFC, which is based on all relevant evidence of a claimant's ability to do work despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.927(d)(2). The RFC describes the most a claimant can do in a work setting despite limitations resulting from the claimant's impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). It is based on consideration of the relevant medical and other evidence in the record. Id. "The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor." Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (per curium) (unpublished). The absence of a treating or examining physician's opinion does not necessarily preclude the ALJ from making a proper RFC determination. See Green v. Soc. Sec. Admin., 223 F. App'x 915, 923–24 (11th Cir. 2007) (per curiam) (unpublished). Further, the ALJ must consider all of a claimant's impairments, including subjective symptoms such as pain. 20 C.F.R. § 416.945(a)(3).

The ALJ determined that Plaintiff had the RFC to perform for medium work with the following limitations: occasionally lift up to fifty pounds; frequently lift and carry up to twenty-five pounds; never climb ladders, ropes, or scaffolds; frequently climb ramps/stairs, balance, stoop, crouch, kneel, or crawl; and must avoid even moderate exposure to extreme cold, extreme heat, humidity, and irritants such as fumes, odors, dust, and gases. (T 24)

As explained previously, the ALJ considered Plaintiff's medical and mental health history, as well as his hearing testimony and the assessments of state agency consultants. The record does

not include any opinion from a treating physician regarding any work-related limitations Plaintiff may have. (T 27) Substantial evidence supports the ALJ's RFC determination, and this issue does not entitle Plaintiff to relief.

**F.** Plaintiff also contends that the ALJ did not pose a complete hypothetical question to the VE because the question "inexplicably omitted the evidence of the Claimant's mental and physical impairments to their proper degree of severity and resulting limitation." (Dkt. 21 at 9-10) However, Plaintiff does not develop his argument factually on this issue. For example, he does not identify which functional mental limitations Plaintiff has which were not included in the hypothetical question and why the absence of any such limitations is grounds for remand.

In order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question to the VE that includes all of a claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citation omitted). However, the ALJ is required to include only limitations that the ALJ finds supported by evidence. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004). The "mere existence of [an] impairment[] does not reveal the extent" to which it limits a claimant's ability to work. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (per curiam) (citation omitted).

The ALJ's hypothetical question was complete and properly included all of Plaintiff's limitations as reflected in Plaintiff's RFC, which is supported by substantial evidence. Accordingly, this issue does not entitle Plaintiff to relief.

### Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner should therefore be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) The decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2) The Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Date: October 30, 2014**

ELIZABETH A JENKINS
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:

Counsel of Record

District Judge